### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PARTS iD Inc., *et al.*,[1] | Case No. 23-12098 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: At the hearing** |
| | **Hearing Date: January 17, 2024 at 3:00 p.m. (EST)** |

### MOTION OF THE DEBTORS
### FOR AUTHORIZATION TO USE CASH COLLATERAL TO PAY FOR THE
### SERVICES OF COUNSEL TO THE AD HOC VENDOR GROUP

The above-captioned debtors and debtors in possession (the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtor to use cash collateral to pay for the legal fees and costs of counsel for an ad hoc committee of eight (8) vendors, holding unsecured claims in the aggregate amount of approximately $13.1 million, comprising approximately 42% of the total vendor debt (the "Vendor Group"). In support hereof, the Debtors rely on the *Declaration of Lev Peker* submitted in support of the Motion (the "Peker Declaration"), a copy of which is attached hereto Exhibit B, and the legal authorities set forth in the Motion, pursuant to which the Debtors respectfully state as follows:

#### Preliminary Statement

1.      Prior to the commencement of this chapter 11 proceeding, the Vendor Group played an important role in negotiating a restructuring support agreement with the Debtors, resulting in

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: PARTS iD, Inc. (4868) and PARTS iD. LLC (5607). The corporate headquarters and the mailing address for the Debtors is 1 Corporate Drive, Suite C, Cranbury, NJ 08512.

the Debtors' decision to initiate these pre-packaged chapter 11 cases with confidence that a confirmable plan will be achieved. The parties' discussions, with the advice of their respective legal advisors, were aimed at resolving the Debtors' debt issues with their key parts vendors, culminating in the execution of a restructuring support agreement (the "Vendor RSA"). Peker Decl. ¶6. To ensure that the Vendor Group was able to consider the complexities of the Vendor RSA and bankruptcy law, they engaged the law firm of Cole Schotz P.C. ("Cole Schotz").

2.      While the Vendor Group executed the Vendor RSA to memorialize the treatment to be afforded them in a chapter 11 plan, the effectiveness of the Vendor RSA required the Debtors to obtain by a certain date a minimum percentage of vendor accession and a specified level of financing to fund the plan payments. The Vendor RSA did not go effective. Nevertheless, the Vendor Group, through its counsel, remained in constant communication with the Debtors' representatives and counsel as the Debtors dual-tracked negotiations with their debtor-in-possession lender and plan sponsor.

3.      In the days leading up to the filing of this proceeding on the morning after Christmas, counsel for the Vendor Group continued to review and discuss the terms of the plan with the Debtors' representatives. Counsel for the Vendor Group has informed the Debtors' representatives because of holiday vacation schedules, changes in the plan and review and understanding of the financing documents that had different terms from what was within the Vendor RSA just before and into the Christmas holiday, the Vendor Group and its counsel were not able to finalize their discussions with the Debtors and plan sponsor.

4.      Prior to the Petition Date, the Debtors have paid Cole Schotz fees for its representation of the Vendor Group in the ordinary course of business. This agreement continued after the parties entered into the Vendor RSA as ordinary course payments, including, but not

Case 23-12098-LSS    Doc 72    Filed 01/08/24    Page 3 of 15

limited to review and negotiation by Cole Schotz of the Plan and the various interim orders related to debtor in possession financing. *Id*. at ¶¶ 8 and 9.

5. To ensure the Vendor Group is able to continue to have competent legal counsel in reviewing the events in these cases, the Debtors' business judgment is that it is critical to continue to pay Cole Schotz from cash collateral in the ordinary course of business. The parties have agreed to a cap of a $75,000.00, up through and including confirmation of a plan by the dates presently scheduled. This is a valid and important exercise of the Debtors' business judgment, as without the prepetition efforts of the Vendor Group and Cole Schotz, the Debtors would likely have not filed for chapter 11 and instead been forced to liquidate under chapter 7. The Debtors believe that the relief requested in this Motion will ensure continuity of representation to the Vendor Group and fairness of process in these cases for this Vendor Group.

6. Notably, the Vendor Group is vital to the Debtors' business, as without the Vendors' products, the Debtors would be unable to provide goods to its customers on the Debtors' e-commerce platform. By entering into the Vendor RSA and the negotiations thereafter, the Debtors believe that allowing the Vendor Group and its counsel to complete their work, they can resolve substantially all the important issues to these chapter 11 cases, including providing for a significant compromise of vendor claims while ensuring continued vendor support for the Debtors' business. The Debtors believe that the Vendor Group is unique and broadly constituted as it represents the Debtors' primary source of products that it sells to its customers.

7. Given the diverse membership of the Vendor Group, the complexity of the issues in these chapter 11 cases and the incremental expense that will be avoided if consensus with a key creditor group can be reached, the Debtors submit that it is in the best interests of the Debtors that the proposed order accompanying this Motion be entered. *Id*. at ¶11. Accordingly, the Debtors

-3-

ACTIVE\1606544803.1

respectfully submit that the relief requested herein is in the best interest of the estate and should be granted under section 363 of the Bankruptcy Code.  The Debtors' lender and plan sponsor consents to such relief and payment of fees of Cole Schotz as set forth herein will have no negative impact on the treatment of any creditors and parties-in-interest under the plan.

## JURISDICTION AND VENUE

8.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these chapter 11 cases, the Debtors, property of the Debtors' estates and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012 (Sleet, C.J.).  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

9.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with article III of the United States Constitution.

10.     Venue of these cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

11.     The statutory bases for the relief requested in this Motion is section 363 of the Bankruptcy Code.

## Background

12.     On December 26, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code, thereby commencing the chapter 11 cases.

13.     The Debtors remain in possession of their properties and continue to operate their business and manage their property as debtors in possession.  As of the date hereof, no trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases.

14.     Additional factual background regarding the Debtors, including their business operations, capital and debt structures and the events leading to the filing of these chapter 11 cases, is set forth in the *Declaration of Lev Peker in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 19] (the "<u>First Day Declaration</u>") which is incorporated herein by reference.

**<u>Relief Requested</u>**

15.     By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing the Debtors to pay the fees of the Vendor Group's counsel.

**<u>Facts Specific to the Relief Requested</u>**

16.     The Debtors provide product vendors (the "<u>Vendors</u>") with access to their platform, large customer base, and e-commerce market.  Over 1,000 Vendors have leveraged the Debtors' technology to position and sell their product catalog to customers.  The Debtors' platform, which incorporates live or frequently updated inventory feeds from Vendors, provides stock-on-hand for up to 18 million products across over 4,500 active brands.  The Debtors' fulfillment model decides which Vendor to source from while the sale is made based on a proprietary algorithm, which incorporates factors such as availability of inventory, customer proximity, shipping cost and profitability.  This system allows the Debtors to service customers nationwide while carrying minimal inventory.  As a result, the Debtors' business model relies heavily on its relationship with the Vendors.

17.     The Debtors began experiencing distress in late 2022, and in early 2023 retained DLA Piper to begin negotiations to restructure its debt out of court.  In an effort to restructure the Debtors' outstanding Vendor debt, in April 2023, the Debtors invited certain of their largest

Vendors to serve on the Vendor Group.  Peker Decl. ¶ 4.  The Debtors also agreed to pay for legal representation of the Vendor Group, who hired Cole Schotz, to represent them in connection with the potential out of court restructuring of the Debtors' Vendor liabilities.  *Id*. at ¶ 8.  As part of the Debtors' negotiations with the Vendor Group, the Debtors paid Cole Schotz in advance on account of the fees they were incurring representing the Vendor Group.  *Id.*  After several months of negotiations, on October 6, 2023, the Debtors entered into the Vendor RSA to restructure the Company's indebtedness with certain of its trade vendors (the "Consenting Vendors").  *Id.* at ¶6.

18.    The terms of the Vendor RSA were, and remain, independent from the Restructuring Transactions contemplated in the Debtors' chapter 11 plan [D.I. 14] (the "Plan") and these chapter 11 cases.  Specifically, pursuant the terms and conditions of the Vendor RSA, the Debtors agreed to pay to each Consenting Vendor an amount equal to 55% of such total Vendor claim, consisting of (A) an initial payment of 12.5% of such Vendor claim and (B) the remaining 42.5% of such Vendor claim paid monthly over 36 months.  The Debtors further agreed to pay to each holder of a Convenience Claim an amount equal to 65% of such Convenience Claim.  The effective date of the Vendor RSA was conditioned upon the accession of Consenting Vendors holding at least 80% of the aggregate amount of all claims owed to Vendors for past due invoices (the "Total Claims Amount") within 30 days of the Debtors' execution of the Vendor RSA. Despite the Debtors' efforts, it did not achieve the requisite support prior to November 6, 2023, but as of the date hereof, Consenting Vendors holding more than 80% of the Total Claims Amount have acceded to, or indicated that they would have, acceded to the Vendor RSA.  However, the operative milestones were not met, meaning that the Consenting Vendors could elect less favorable treatment or terminate their obligations under the terms of the Vendor RSA.  Nevertheless, the

ACTIVE\1606544803.1

Debtors continued to negotiate with the Vendor Group, with the Vendor RSA serving as the structure for the Plan.

19.     Since November 6, 2023, and since the Petition Date, the Vendor Group has continued to work with the Debtors and has provided ample support for confirmation of the Plan. The relief requested in this Motion is necessary to ensure the Vendor Group continues to receive the skilled legal advice from Cole Schotz as it has the context and background to efficiently continue to advise the Vendor Group since the Plan is a continuation of the negotiation process that served as the backdrop to the Vendor RSA, and the continued performance and retention of Cole Schotz is integral to ensuring the Plan confirmation issues that are relevant to the Vendors are adequately considered by the Vendor Group.  *Id.* at ¶ 11.

## I.     Summary of Agreement Terms

20.     After, but retroactive to the Petition Date, the Debtors and the Vendor Group reached an agreement, whereby the Debtors agreed to pay up to $75,000 to Cole Schotz, the Vendor Group's counsel, until the confirmation of the Debtors' plan as presently scheduled, as payment of the reasonable fees and expenses incurred, subject to Court approval of this Motion. *Id.* at ¶9.  The understandings contain the following key terms:

        a. Cole Schotz may represent the interests of the Vendor Group during the pendency of these chapter 11 cases, without the need to be separately retained pursuant to an order of the Court.

        b. The Debtors shall pay Cole Schotz up to a cap amount of $75,000.00 through the date of the presently scheduled confirmation hearing to cover the Cole Schotz's fees and expenses through that time.

        c. The Debtors shall have no right to direct, control, or influence how Cole Schotz acts in the case or carries out its duties to the Vendor Group.

ACTIVE\1606544803.1

**Basis for Relief**

21.     Under Section 363 of the Bankruptcy Code, Debtors are entitled to seek payment of the fees and expenses of professionals serving non-statutory, ad-hoc groups, as the participation and advocacy of these professionals for the interests of such constituents is essential for brokering consensus in complicated liability issues.    *City of Rockford* v. *Mallinckrodt PLC (In re Mallinckrodt PLC),* Civ. No. 21-167-PLS at p. 18 (D. Del. Mar. 28, 2022).    Other courts have uniformly agreed.    *See*, *e.g.*, *In re Kidde-Fenwal, Inc.*, Case No. 23-10638 (LSS) (Bankr. D. Del. Nov. 13, 2023) [D.I. 627] (approving under section 363 debtors' entry into post-petition agreement with ad hoc committee for payment of ad hoc committee's professional fees); *In re Purdue Pharma, L.P.,* Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. Dec. 2, 2019) [D.I. 553] (approving under section 363 payment of governmental plaintiff ad hoc committee's professional fees under reimbursement agreement); *In re Hercules Offshore, Inc.,* Case No. 1511685 (KJC) (Aug. 24, 2015) [D.I. 95] (approving under section 363 payment of unsecured creditors' professional fees as part of RSA assumption); *In re Dendreon Corp.*, Case No. 14-12515 (PJW) (Dec. 23, 2014) [D.I. 215] (same); *In re Rural/Metro Corp.,* Case No. 13-11952 (KJC) (Sept. 5, 2013) [D.I. 217]) (same); *In re Edison Mission Energy*, Case No. 12-49219 (JPC) (Bankr. N.D. Ill. Jan. 18, 2013) [D.I. 317]) (same); *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Sept. 21, 2012) [D.I. 4652]) (similar under section 363); *see also In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 460-63 (Bankr. S.D.N.Y. 2014) (same under section 365); *In re Bethlehem Steel Corp.,* No. 02 Civ. 2854, 2003 WL 21738964, at *12 (S.D.N.Y. July 28, 2003) (affirming reimbursement under section 363(b) of creditor's professional fees "to help evaluate and negotiate the terms of a plan").

22.     The Debtors believe that in order to confirm the Plan and resolve any and all remaining issues in these chapter 11 cases in a time-efficient and cost-effective manner requires

-8-

the coordinated participation of all parties-in-interest, including the Vendor Group represented by Cole Schotz. Peker Decl. at ¶ 11. Payment of reasonable fees and expenses to Cole Schotz is not only necessary, but also a continuation of the ordinary course of business of the Debtors in their negotiations with the Vendor Group prior to the Petition Date. *Id.* at ¶¶ 8-10.

23. The Debtor believes it is in the best interest of, and would be beneficial to, the Debtors, their estates, creditors and parties in interest, to pay the reasonable fees and expenses incurred by Cole Schotz to represent the interests of the Vendor Group. *Id.* at ¶ 11. The Debtors, therefore, in an exercise of their business judgment, agreed to the foregoing terms and conditions.

## I. Section 363(b) of the Bankruptcy Code Authorizes the Debtor to Enter into, and Perform Under, the Parties' agreement.

24. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363(b) "provide[s] the right procedural mechanism[s] through which debtors may seek to pay [an ad hoc committee] professional fees and expenses on a prospective basis." *Mallinckrodt* at *6 (internal quotation marks omitted); *see also*, Hr'g Tr. at 34:1-5, *In re Mallinckrodt PLC*, Case No. 20-12522 (JTD) (Dec. 14, 2020), D.I. 852 ("I agree with the debtors that Section 363 provides the procedural mechanism for a debtor to seek the authority to make payments to unsecured creditor groups that if the group, itself, sought payment it would need to be made pursuant to Section 503."); Hr'g Tr. at 84:7-25, *In re Extraction Oil & Gas, Inc.*, Case No. 20-11548 (CSS) (Dec. 22, 2020), D.I. 1534 ("I would generally agree with this concept that 363 allows you to do anything unless it's controverted by the code in another provision. . . . So I don't think necessarily that 503 is exclusive on these issues [about payment to unsecured creditors' professionals].") While the Debtors have been paying Cole Schotz for several months, they recognize that use of section 363(b) as a basis to pay an ad hoc group's legal fees is done best

by presenting an application to the Court.  *See, e.g., In re Boy Scouts of Am.,* et al., Case No. 10808, 2023 WL 8449557, at *3 (Bankr. D. Del. Dec. 5, 2023) (citing this Court's bench ruling in the Kidde-Fenwall, Inc. case to set out the dynamic and circumstances to be considered on application of this nature).

25.    The applicable legal standard in respect of a debtor seeking prospective authorization to enter into a reimbursement agreement under section 363(b) is the business judgment test.  *Mallinckrodt* at *6.  Under the business judgment test, "a bankruptcy court will authorize debtor-initiated actions if the debtor shows that 'a sound business purpose justifies' such actions."  *Id.*  "Where [a debtor] articulates a reasonable basis for the business decision, courts will generally not entertain objections."  *In re Culp*, 545 B.R. 827, 844 (D. Del. 2016), aff'd, 681 F. App'x 140 (3d Cir. 2017).  And as indicated in the *Boy Scouts* reference above, in a setting like this, a debtor's decision is "not an operational one to which greater deference may be owed.  Rather . . . the decision is a strategic one about what Debtor believes may pave a more efficient path to an exit."  *In re Boy Scouts*, 2023 WL 8449557, at *3.

26.    The Court does not need to wait and see if a plan is confirmed, however, before approving professional fees under section 363(b).  *Mallinckrodt* at *11 (approving debtors to pay an ad hoc committee professional fees under section 363 prospectively prior to plan confirmation over objections); *see also*, Hr'g Tr. 40:24-41:1-3, *RCS Capital Corporation, et. al.*, Case No. 16-10223 (MFW) (Mar. 16, 2016), D.I. 334 ("I disagree with the United States Trustee that I need to wait and see if the plan is confirmed before I can approve such fees.  Getting the Debtor stabilized and on track to an exit; whether it is ultimately approved in that form is not necessary.").

ACTIVE\1606544803.1

27.    The Debtor respectfully submits that its decision to pay up to $75,000 of Cole Schotz's reasonable fees up through the date presently scheduled for the confirmation hearing[2] is a sound exercise of its business judgment even if that decision is not operational in nature because the Vendor Group has come to rely on Cole Schotz and ensuring continuity of that representation through the confirmation process will ensure certainty for the Vendors.  Without the support of the Vendor Group, not only will the Debtors risk not obtaining confirmation of the Plan, but they also risk losing or having uncertainty and confusion for their most important constituency to continue the Debtors' business on a go-forward basis.  Without the products provided by the Vendor Group, the Debtors will be unable to service their customers and will have no prospective business.  Given the nature of the Debtors' business, the need for the Vendor Group, and the important role Cole Schotz will play in advancing representation of the Vendor Group in the context of the Debtors' efforts to obtain a prompt confirmation of the Plan, the Debtors' decision to pay the reasonable fees and expenses of Cole Schotz is justified by a sound business purpose and makes imminent sense in the context of this case.  *Id.* at ¶ 11.

28.    As the Court recognized in *Mallinckrodt*, "[t]he ability to work with the ad hoc group[s] of creditors rather than trying to negotiate with vast numbers of individual creditors clearly provides for a more streamlined and convenient way to move toward completing a successful reorganization."  Hr'g Tr. 29:2-6, Case No. 20-12522 (JTD) (Dec. 14, 2020), D.I. 852. These benefits will be, and already have been, realized in these chapter 11 cases.  As set forth above, the Vendor RSA formed the basis for the Plan that the Debtors are currently soliciting, and

---

[2]    Cole Schotz reserves the right to request the Debtors' agreement to an additional fee amount as a condition to its continued involvement should confirmation be delayed, or the course of this case substantively broaden.

believe the continued support of the Vendor Group will assist the Plan to be expeditiously and cost-effectively confirmed.

29.     The Debtor believes the anticipated costs of Cole Schotz will be lower when compared to the costs associated with negotiating with each Vendor singularly in the absence of the Vendor Group.  Peker Decl. at ¶ 11.  Without the active involvement of the Vendor Group, as represented by Cole Schotz, the Debtors' resolution of these significant interests would depend upon separate negotiations with each Vendor, or the smaller Vendors would not have the ability and access to participate in these cases.  Such separate negotiations would be unduly burdensome and costly for the Debtors and its estates. The Debtors believe that the existence of the Vendor Group, represented by capable legal counsel, has streamlined the consensus-building process, and the Debtors anticipate that the Vendor Group's continued participation will be integral towards confirming a chapter 11 plan.  *Id.* at ¶¶ 6, 7 and 10.  Additionally, the parties' agreement and the payment simply continue the prepetition practice of the Debtors and the Vendor Group, as the Debtors have been regularly paying Cole Schotz during the pre-petition negotiation process.  *Id.* at ¶ 8.

30.     Courts in this and other districts have approved similar payments to non-estate professionals based on debtors' business judgment that doing so facilitates the reorganization process.  *See In re Mallinckrodt PLC*, No. 20-12522 (JTD) (Feb. 1, 2021), D.I. 1250 (approving reimbursement agreements under section 363(b) prior to plan confirmation); *In re Purdue Pharma, L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Dec. 2, 2019), D.I. 553 (approving payment to ad hoc committee's professionals under sections 363(b) and 365 prior to plan confirmation); *In re Hercules Offshore, Inc.*, No. 15-11685 (KJC) (Aug. 24, 2015), D.I. 95 (finding that the debtors' decision to assume a restructuring support agreement, which includes payments to non-estate

professionals prior to plan confirmation, to be "a sound exercise of their business judgment"); *In re Bethlehem Steel Corp.,* 2003 WL 21738964, at *12 (S.D.N.Y. July 28, 2003) (authorizing payments to creditors' professionals under section 363(b) "to help evaluate and negotiate the terms of a plan").

## II.    Approving the Parties' Fee Arrangement Will Benefit the Debtors' Estates as a Whole

31.    The use of section 363(b) of the Bankruptcy Code by debtors in seeking authority to pay non-estate professional fees requires that such fees benefit the debtors' estates, as opposed to individual creditors. *See Mallinckrodt* at *6. This requirement is satisfied when a reimbursement agreement "assures that the reimbursements will be for work that benefits the debtors' estates as a whole, rather than individual creditors or creditor groups." *Id*. The Debtors respectfully submit that honoring the agreement with Cole Schotz will facilitate the progress of these chapter 11 cases to the benefit of the estate as a whole.

32.    *First*, Cole Schotz has not been retained to represent any individual Vendor in its individual capacity in these chapter 11 cases. The Vendor Group's retention of Cole Schotz is solely with respect to the collective interests of the Vendor Group, predates these cases, and has been paid for by the Debtors.

33.    *Second*, payment of Cole Schotz's fees and expenses is limited to a cap of $75,000.00 initially. Accordingly, the Debtors submit that they should be authorized to perform the payment arrangement referenced in this Motion.

## III.    Authorization *Nunc Pro Tunc* to December 26, 2023 is Appropriate under the Facts and Circumstances.

34.    The Debtors respectfully submit that authorization to pay Cole Schotz *nunc pro tunc* to December 26, 2023 is warranted under the facts and circumstances. While Section 363 of the Bankruptcy Code does not specifically discuss *nunc pro tunc* relief, courts have held that relief

-13-

may be approved retroactively to a date prior to the entry of the order authorizing the relief requested. *See Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 734 (Bankr. D. Del. 2009) (providing that a bankruptcy court may enter a rejection order with an effective date earlier than the date the order is entered); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in a particular case). Further, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

35.    *Nunc pro tunc* relief is warranted here because Cole Schotz attended the first day hearings, monitored this chapter 11 proceeding and the filings herein and has regularly communicated with the Debtors and their representatives since the Petition Date. Accordingly, authorization to pay counsel for the Vendor Group *nunc pro tunc* to December 26, 2023 is appropriate here. *See*, *e.g.*, *In re Kidde-Fenwal, Inc.*, Case No. 23-10638 (LSS) (Bankr. D. Del. Nov. 13, 2023) [D.I. 627] (authorizing *nunc pro tunc* entry of post-petition agreement to reimburse ad hoc group professional fees.)

**Notice**

36.    Notice of this emergency Motion has been or will be provided to: (a) the United States Trustee for the District of Delaware; (b) the Debtors' consolidated list of top thirty-creditors; (c) the Vendor Group; and (d) all parties who have filed a notice of appearance pursuant to Bankruptcy Rule 2002. Based on the urgency of the circumstances surrounding this Motion, and in light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

ACTIVE\1606544803.1

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: January 8, 2024
      Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**
*/s/ R. Craig Martin*
R. Craig Martin (DE 5032)
1201 N. Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email:  craig.martin@us.dlapiper.com

-and-

Erik F. Stier (admitted *pro hac vice*)
500 8th Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4258
Facsimile: (202) 799-5000
Email: erik.stier@us.dlapiper.com

*Proposed Counsel for the Debtors*

ACTIVE\1606544803.1