UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | . | Chapter 11 |
|  | . |  |
|  | . | Case No. 23-12098(LSS) |
| PARTS iD, INC., et al, | . |  |
|  | . |  |
|  | . | 824 Market Street |
|  | . | Wilmington, Delaware 19801 |
| Debtors. | . |  |
| . . . . . . . . . . . . . . . | . | Friday, February 2, 2024 |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
CHIEF UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:            R. Craig Martin, Esq.
                            DLA PIPER, LLP (US)
                            1201 North Market Street
                            Suite 2100
                            Wilmington, Delaware 19801

                            Erik F. Stier, Esq.
                            DLA PIPER, LLP (US)
                            500 8th Street, NW
                            Washington, D.C. 20004

For the U.S. Trustee:       Linda Casey, Esq.
                            OFFICE OF THE U.S. TRUSTEE
                            844 King Street, Suite 2207
                            Wilmington, Delaware 19801

(Appearances Continued)

Audio Operator:             Electronically Recorded
                            by Kim Ross, ECRO

Transcription Company:      Reliable
                            1007 N. Orange Street
                            Wilmington, Delaware 19801
                            (302)654-8080
                            Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
APPEARANCES:  (Continued)

For Fifth Star, Inc.:        Edmon L. Morton, Esq.
                             YOUNG, CONAWAY, STARGATT
                              & TAYLOR, LLP
                             Rodney Square
                             1000 North King Street
                             Wilmington, Delaware 19801

                             Matthew A. Clemente, Esq.
                             SIDLEY AUSTIN, LLP
                             One South Dearborn
                             Chicago, Illinois

                             Juliana Hoffman, Esq.
                             SIDLEY AUSTIN, LLP
                             787 Seventh Avenue
                             New York, New York 10019

For Cigna:                   Jeffrey C. Wisler, Esq.
                             CONNOLLY GALLAGHER, LLP
                             1201 North Market Street
                             20th Floor
                             Wilmington, Delaware 19801

For ID Parts, LLC:           Nicholas J. Brannick, Esq.
                             BALLARD SPAHR, LLP
                             919 North Market Street
                             11th Floor
                             Wilmington, Delaware 1980

APPEARANCES VIA ZOOM:

For the Debtors:             Daniel Trager, Esq.
                             DLA PIPER, LLP (US)
                             1201 North Market Street
                             Suite 2100
                             Wilmington, Delaware 19801

                             William L. Countryman, Esq.
                             DLA PIPER, LLP (US)
                             650 South Exeter Street
                             Baltimore, Maryland 21202

                             Robert K. Moskalewicz, Esq.
                             DLA PIPER, LLP (US)
                             444 West Lake Street, Suite 900
                             Chicago, Illinois 60606

(Appearances Continued)
```

APPEARANCES VIZ ZOOM:   (Continued)

```
For Lind Global Fund
II, LP:                      Julia Blackburn, Esq.
                             MORGAN, LEWIS & BOCKIUS, LLP
                             101 Park Avenue
                             New York, New York 10178

                             Andrew J. Gallo, Esq.
                             MORGAN, LEWIS & BOCKIUS, LLP
                             One Federal Street
                             Boston, Massachusetts 02110

For Fifth Star, Inc.:        Alexis Cooper, Esq.
                             Becca Dyson, Esq.
                             Allison Stromberg, Esq.
                             Annie Wallis, Esq.
                             Christian Wyse, Esq.
                             SIDLEY AUSTIN, LLP
                             One South Dearborn
                             Chicago, Illinois

                             Dustin Page, Esq.
                             SIDLEY AUSTIN, LLP
                             1999 Avenue of the Stars
                             17th Floor
                             Los Angeles, California 90067

                             Taylor Sherman, Esq.
                             COHN REZNICK, LLP
                             1800 West Loop South, Suite 1120
                             Houston, Texas 77057

For Interested Creditors:    Stuart Komrower, Esq.
                             COLE SCHOTZ, PC
                             25 Main Street
                             Hackensack, New Jersey

For ID Parts, LLC:           John L. Strand, Esq.
                             WOLF GREENFIELD
                             Boston, Massachusetts 02210


Also Appearing:              John Pendleton
                             PARTS ID

                             Nathan Rosenblum
                             HAIN CAPITAL

(Appearances Continued)
```

APPEARANCES VIA ZOOM:   (Continued)

Also Appearing:                 Derek W. Vidor
                                RCC

                                Carl Sandberg, Interested Party
                                 on behalf of Fifth Star, Inc.

                                Ed Taibi, Interested Party on
                                 behalf of Fifth Star, Inc.

                                Sam Yagan, Interested Party on
                                 behalf of Fifth Star, Inc.

                                Taylor Harrison
                                DEBTWIRE

                                Jessica Steinhagen
                                REORG

                                Vince Sullivan
                                LAW 360

INDEX

PAGE

MOTION OF THE DEBTORS FOR AUTHORIZATION TO USE CASH        6
COLLATERAL TO PAY FOR THE SERVICES OF COUNSEL TO THE
AD HOC VENDOR GROUP

JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION
        Presentment/Argument by Mr. Martin                 8
        Review of Confirmation Order                    12,16
        Court Decision                                     14

MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL      46
ORDERS (I) AUTHORIZING THE (A) CONTINUED USE OF THE
DEBTORS' CASH MANAGEMENT SYSTEM AND (B) PAYMENT OF
RELATED PREPETITION OBLIGATIONS; (II) SUSPENDING THE
REQUIREMENTS OF 11 U.S.C. SECTION 345(b); and (III)
GRANTING RELATED RELIEF

EXHIBIT                                                  EVID.

Johnson Declaration at DI 137                             11
Peker Declaration at DI 146                               11

1          (Proceedings commence at 2:00 p.m.)

2          (Call to order of the Court)

3               THE COURT:  Please be seated.

4               MR. MARTIN:  Good morning, Your Honor.

5               THE COURT:  Mr. Martin.

6               MR. MARTIN:  How are you today?  I think -- I don't

7     want to bury the lead.  The good news is, is that I think we

8     have a consensual plan of confirmation -- plan to be

9     confirmed today.  We've been able to resolve the various

10    objections, and we'll certainly update you on that when we

11    get to it.

12              THE COURT:  Okay.

13              MR. MARTIN:  Unless the Court has any different way

14    of proceeding, I'm just going to go through the agenda.

15              THE COURT:  Okay.

16              MR. MARTIN:  The first item, Your Honor already

17    entered the order for Kroll to serve as administrative

18    advisor.

19              The next item we have is Item Number 2, which we

20    did subject a certificate of no objection on.  It relates to

21    our motion to use cash collateral to pay for the services of

22    Cole Schotz as counsel to the ad hoc vendor group.

23              THE COURT:  Right.  And I saw there was no

24    objection.  But I also looked and I don't see on the docket a

25    Rule 29 statement for the group or an entry of appearance or

1    anything.  So, before I consider that motion, there needs to

2    be -- there needs to be a filing.

3            MR. MARTIN:  Okay.  Mr. Komrower should be on the

4    line and he, I'm sure, has heard that and hopefully can file

5    a 2019 statement and notice of appearance.  And then, if Your

6    Honor prefers, we can resubmit the COC at that time.

7            THE COURT:  If you would, just let me know that

8    it's been submitted, then I can take a look at it.

9            MR. MARTIN:  Okay.  Your Honor, we then have the

10   Item 3.  The first matter going forward is we have the

11   standard first-day cash management motion, which we have two

12   interim orders on.

13           We've been in discussions on this with Ms. Casey.

14   And I think she feels, if we get the plan confirmed today,

15   that order can go final; if we don't, she would want a third

16   interim order.  So we could potentially hold that until after

17   the next agenda item, which is our joint prepackaged Chapter

18   11 plan.

19           THE COURT:  Okay.

20           MR. MARTIN:  All right.  So, Your Honor, that takes

21   us to Item Number 4, which is our request for confirmation of

22   our plan.  I'm happy to kind of walk the Court through just a

23   brief history behind that and talk about the service and the

24   voting results and offer our declarations in support, unless

25   Your Honor has any other way you'd like me to present it.

1            THE COURT:  That's fine.

2            MR. MARTIN:  Okay.  Thank you, Your Honor.

3            As is apparent from our memorandum of law, these

4    debtors filed their cases on December 26th as a prepackaged

5    plan which was solicited on a small group of parties who had

6    signed a nondisclosure agreement on December 20th, and on the

7    rest of the vendor class on December 26th, right before we

8    filed these cases.

9            After various first-day and status conference

10   hearings, it became apparent that the Class 9 creditor class,

11   which is the class that's general unsecureds, would not, in

12   fact, include certain customers that we had.  And if Your

13   Honor may recall, we then modified our plan to create a Class

14   13 and serve a notice of the commencement of the cases,

15   notice of the confirmation hearing, and sent them a deemed

16   acceptance notice, as well, all of which had indications that

17   they could visit Kroll's website to access the documents.

18           We had also -- in addition to the pre-petition

19   solicitation on December 29th, we served a notice of deemed

20   rejection on Class 9, along with notice of the commencement

21   of the case, and one of the thumb drives that Kroll uses that

22   has all of the documents in support of the disclosure

23   statement and plan.  Those -- there are affidavits of service

24   that reflect all of that from Kroll at Docket Index 117, 118,

25   119, and 130.

1          We also published notice of the confirmation

2   hearing and plan and disclosure statement at Docket Index

3   Number 65.  That was published in the New York Times.

4          And then the voting deadline was in mid January.

5   And in Mr. Johnson's declaration from Kroll at Docket Index

6   137, we have the voting results for the impaired voting

7   classes.  And you'll see that Class 3, 4, and 5, which were

8   all secured claims, all voted 100 percent to accept the plan.

9          And just to remind the Court, Class 3 was the

10  senior secured note claim, that was Lend, that was our

11  existing pre-petition secured lender.

12         We then had a Class 4, which were merchant credit

13  lenders.  There were two creditors in that class, they both

14  voted to accept the claim [sic].

15         And then we had our subordinated secured note

16  claims from various related parties that had provided bridge

17  financing leading into the bankruptcy case.  There were four

18  creditors there, and they all 100 percent voted to accept the

19  plan.

20         Our vendor class, which is the group of creditors,

21  general unsecured creditors that provide the debtor with its

22  inventory, we had 118 creditors voting, 114 accepted, 4

23  rejected.  And we had 25 million -- 25.6 million in value

24  accepting and 353,000 rejecting.

25         Similarly, in our convenience class, which is any

1    claim under $10,000, we had 85 creditors voting, 83 or 97

2    percent accepted; claims of 293,000, and we had 2 creditors

3    reject, a total of $1,362 in claims.

4              So, with those voting results, the plan, all of the

5    impaired classes voted to accept.

6              We then had two objections filed and we received

7    informal comments from Cigna and the United States Trustee's

8    Office.  The -- both have provided language that we've

9    adopted into a revised a confirmation order and have resolved

10   those objections -- or those informal comments.

11             We also received two formal written objections, one

12   from Google, which was withdrawn this morning at --

13             THE COURT:  Uh-huh.

14             MR. MARTIN:  -- Docket 161.

15             And then we also had an objection and a

16   supplemental objection from a company called ID Parts,

17   related to some litigation that's pending in Massachusetts.

18             We have also reached an agreement on language to

19   insert into the confirmation order that resolves the ID Parts

20   objection, and we can show Your Honor a redline at the

21   appropriate time.

22             So, with all of that, Your Honor, and for the

23   reasons we've stated in our memorandum of law, we believe

24   we've satisfied the requirements under Section 1129.

25             And in support of the arguments in our memorandum

1    of law, we have the declaration of Mr. Lev Peker at Docket

2    146, and the declaration of Mr. Craig Johnson from Kroll

3    related to voting at 137.  And I would like to admit both of

4    those into evidence in support of our request for

5    confirmation today.

6              THE COURT:  Does anyone object to either of those

7    declarations coming into evidence?

8         (No verbal response)

9              THE COURT:  I hear no one.

10             Mr. Johnson and Mr. Peker's declarations are both

11   admitted.

12        (Johnson Declaration at DI 137 received in evidence)

13        (Peker Declaration at DI 146 received in evidence)

14             MR. MARTIN:  Thank --

15             THE COURT:  Does anyone wish to cross-examine?

16        (No verbal response)

17             THE COURT:  I hear no one.

18             MR. MARTIN:  All right.  Thank you, Your Honor.

19             So I -- obviously, I'm happy to proceed further

20   however you like.  But we do have a -- I don't know if we

21   have it here or not yet.

22        (Participants confer)

23             MR. MARTIN:  It's on the way.  Okay.  Mr. Trager is

24   bringing over a proposed redline.

25        (Participants confer)

1          MR. MARTIN:  May I approach, Your Honor?

2          THE COURT:  You may.

3          MR. MARTIN:  I think we may need one more, so maybe

4    I will give you one and give one to your clerk.

5          (Participants confer)

6          THE COURT:  Okay.  Thank you.

7          MR. MARTIN:  Can always count on Mr. Morton, Your

8    Honor.

9          (Pause in proceedings)

10         MR. MARTIN:  Okay, Your Honor.  So just a, you

11   know, high-level overview.  Many of these changes -- most of

12   the changes were made in response to Ms. Casey's input, based

13   on her experience in appearing before Your Honor and things

14   that you dislike in confirmation orders, and we've made those

15   changes.

16         And then the other predominantly large change is

17   the one that resolves the ID Parts objection.

18         THE COURT:  Uh-huh.

19         MR. MARTIN:  So happy to flip through it a page at

20   a time or give Your Honor time to go through it and ask us

21   any questions about it, or however you wish to proceed.

22         THE COURT:  If you'd show me where the -- let's see

23   if it -- the ID Parts.  I remember there's something towards

24   the end.

25         MR. MARTIN:  Yes.

1          (Participants confer)

2              MR. MARTIN:  Yeah, Paragraph 45 in the ordered

3      paragraphs, which is on Page 50 of the redline.

4          (Pause in proceedings)

5              THE COURT:  Okay.  That language is agreed to or --

6              MR. MARTIN:  It is.  And Mr. Brannick is in the

7      courtroom today.

8              THE COURT:  I see him.

9              MR. MARTIN:  If you would like him to confirm that,

10     I'll step aside.

11             THE COURT:  I would like that confirmed on the

12     record.

13             MR. MARTIN:  Thank you.

14         (Participants confer)

15             THE COURT:  Oh, if you need time to see it, that's

16     fine.

17             MR. MARTIN:  Well, he agreed to it by email.  He

18     probably wants to make sure it's the same on that version.

19             MR. BRANNICK:  It looks right to me, Your Honor.

20             Oh, for the record, Nicholas Brannick of Ballard

21     Spahr on behalf of ID Parts, LLC.

22             And this is the language we negotiated to resolve

23     our objection, which we will happily withdraw.  And we

24     appreciate Mr. Martin's and his co-counsel Mr. Stier's

25     efforts to resolve this issue.

1           THE COURT:  Thank you.

2           MR. BRANNICK:  Thank you.

3           MR. MARTIN:  So, beyond that, Your Honor, I don't

4   know if you want to go through any other specific provisions

5   or if you'd like us -- like to provide any further input that

6   the Court has or if you just would like us to upload an

7   order.

8           THE COURT:  Let me ask if anyone else would like to

9   be heard in connection with confirmation.

10      (No verbal response)

11          THE COURT:  Okay.  And Cigna's informal objection

12  has been resolved?  I see Mr. Wisler here.

13          MR. WISLER:  Good afternoon, Your Honor.  Jeffrey

14  Wisler on behalf of Cigna Health and Life Insurance Company.

15          Yes, our informal objection was resolved by

16  Paragraph 35 of the most recent filed with the Court.

17          THE COURT:  Okay.  Thank you.

18      (Participants confer)

19          THE COURT:  Okay.  I may have some comments to the

20  order.  I need to flip through it relative to the new order

21  that I was just given.

22          But first let me rule that I will confirm the plan.

23  There are no remaining objections to it.

24          The -- and I will approve the disclosure statement

25  portion of the -- well, I will approve the disclosure

1    statement, I guess, on a final basis.

2         The -- I will find that the disclosure statement

3    contains sufficient information for parties entitled to vote

4    on the plan to make an informed election.  I note that the --

5    those parties were either sophisticated parties, lender

6    parties or parties to the vendor group that had been involved

7    in the case pre-bankruptcy.

8         With respect to confirmation, the debtors'

9    memorandum walks through the 1129 standards.

10        At a high level, I will note the vote of the voting

11   classes was overwhelmingly in favor of the plan.  The --

12   therefore, we had an impaired accepting class, as well.

13        The liquidation analysis attached showed that

14   parties will be getting at least what they would be getting

15   in a Chapter 7 case.

16        The feasibility analysis has not been challenged.

17        The -- no one has suggested that this case was

18   filed in anything other than good faith or that the plan is

19   filed in anything other than in good faith, that it is not to

20   avoid taxes.

21        The impaired classes, first, no one has objected to

22   the plan on the grounds -- on an 1129(b) grounds, that it's

23   not fair and equitable.  No one has suggested that the

24   classification of the general unsecured creditors is not

25   appropriate in the circumstances of this case.

1    And certainly, with respect to the class -- well,

2    with respect to Class 9, which is the general unsecured

3    creditors, no lower class that is on the priority scale, 10,

4    11, or 12, is receiving any recovery.  And as to 10, 11, and

5    12, as to each of them, no class below them is receiving any

6    recovery, and no class ahead of them is receiving more than

7    they should under the priority scheme in the Code.

8    So I think those are the high points necessary to

9    confirm the plan.

10    Okay.  I can see, through the redline, that Ms.

11    Casey did catch many of the provisions that I do not like to

12    see in confirmation orders, but let me see.

13    Okay.  I'm looking at what was just handed to me,

14    so I'll --

15    MR. MARTIN:  All right.

16    THE COURT:  -- go from that.  And at the bottom of

17    Page 4, (k).  I think we caught judicial notice somewhere

18    else, but we didn't catch it here.

19    MR. MARTIN:  Not there.  Okay.

20    THE COURT:  Okay?

21    (Pause in proceedings)

22    THE COURT:  Paragraph 17, let me see if it's ...

23    yes, the voting.  It references opt-in third-party releases.

24    I do not see in the voting declaration whether we had anybody

25    opt in, I have nothing on that.

1          MR. MARTIN:  Yeah.  So we had two creditors that

2     rejected the plan, but then opted into the releases.  The --

3               THE COURT:  Really?

4               MR. MARTIN:  Yes.

5               THE COURT:  Okay.

6          (Laughter)

7               MR. MARTIN:  We were as surprised as the Court

8     appears to be.

9               And then the plan provides that, if you voted to

10    accept -- and this was on the ballots -- that you were also

11    opting into the release.

12              THE COURT:  Okay.

13              MR. MARTIN:  And then any deemed to accept or

14    deemed to reject was not included in the release.

15              THE COURT:  Okay.  I would like a supplemental

16    declaration or -- by somebody or some kind of filing that

17    shows who has opted into the releases --

18              MR. MARTIN:  Okay.

19              THE COURT:  And I would like it on the docket.

20    Okay.

21          (Participants confer)

22              MR. MARTIN:  Mr. Johnson has stood in the back of

23    the courtroom --

24              THE COURT:  Ah --

25              MR. MARTIN:  -- and said that he would be able to

1      do that --

2                  THE COURT:  Okay.

3                  MR. MARTIN:  -- and we will get that on file.

4                  THE COURT:  Thank you.  I don't want there to be

5      any confusion down the line.

6          (Pause in proceedings)

7                  THE COURT:  In Paragraph 27, on Page 15, there is a

8      reference in Sub (h) to a restructuring support agreement.

9      Did we have a restructuring support agreement?  I know we had

10     the vendor agreement.

11         (Participants confer)

12                 MR. MARTIN:  Yeah, we did have a restructuring

13     support agreement, which was attached to the disclosure

14     statement.  But there is nothing in that agreement that

15     requires any corporate action, so we could delete that

16     Subparagraph (h).

17                 THE COURT:  Okay.  I didn't remember it being the

18     subject of discussion.  Okay.

19                 Okay.  Paragraph 39 talks about the injunction.

20     And the injunction -- and I'm finding this, so I think people

21     need to be tuned -- more tuned into this.

22                 If you -- I'm looking at the plan injunction.  And

23     the way I'm reading it is that any party who holds a claim is

24     enjoined from bringing actions.  And that's essentially a

25     third-party release without everyone having given a third-

1    party release.  So, unless I'm reading it incorrectly -- but

2    this is like the second time in the last two weeks that I've

3    had an injunction that, to me, reads like a third-party

4    release.

5           All entities that hold claims that have been

6    discharged -- let's take that one -- under the plan are

7    permanently enjoined from and after the effective date from

8    taking actions against the debtors, the reorganized debtors,

9    the exculpated parties, or any of the released parties.

10          So I think -- I don't know that that was the

11   intent, but that's how I'm reading it.  And I'm finding this

12   more and more often in the injunction sections.  So that

13   needs to be reworked or we need to put something in the order

14   that makes it clear that not -- that rewrites that section,

15   so that we do not have the possibility of reading it the way

16   I'm reading it.

17          MR. MARTIN:  So, Your Honor, I guess the only

18   comment I would have to that is that, as I read it, it's

19   limited to those parties that have actually -- that have

20   actually granted the release under the plan and have received

21   payment.

22          Because of the way we did our release, we have a --

23   we don't have the deemed acceptance or the deemed rejecting

24   parties releasing.  I guess they are discharged --

25          THE COURT:  They are --

1          MR. MARTIN:  -- and that's why --

2          THE COURT:  -- discharged.

3          MR. MARTIN:  -- that's why Your Honor picked up on

4     the word "discharged."

5          THE COURT:  Yeah.  I'm picking the words that --

6          MR. MARTIN:  Yep.

7          THE COURT:  Yeah.  Everybody --

8          MR. MARTIN:  They give you pause.

9          THE COURT:  Well, the claims aren't discharged; the

10    debtor gets a discharge.  But yeah, we use it that way.  So

11    that picks up everybody.

12         MR. MARTIN:  I'm just going to look at ... I'm just

13    going to the definition of "released parties" because I think

14    that's the one you picked up on, right.  So the released

15    parties is the debtors, the reorganized debtors, the DIP

16    agent, DIP lenders, plan sponsor --

17         THE COURT:  A bunch of third parties.

18         MR. MARTIN:  -- and senior secured lender.

19         THE COURT:  Right.

20         MR. MARTIN:  So I think what you're suggesting is

21    that we either amend the plan, which -- or that we put

22    something in the order.  So, if we were to put something in

23    the order, would it be acceptable to include something in

24    this paragraph that clarifies that the injunction -- I guess

25    what you're saying is it's limited to the debtors and the

1    reorganized debtors or --

2          THE COURT:  Well, you've got multiple things going

3    on, that's the problem.  You have multiple thing going on in

4    this provision, it's all-encompassing and all-sweeping.  So

5    it either needs to be targeted and you could have multiple

6    paragraphs that target different subsets of claimants, or you

7    need to have one paragraph like this that makes certain that

8    there are no third-party releases happening.

9          I can't tell you how to craft it, you can figure

10   that out.  But I am finding that more frequently, that people

11   are lumping debtor releases and third-party releases and that

12   makes these paragraphs very difficult to parse through.  And

13   then, in the injunctions, they're picking up everybody,

14   whether or not there are -- and in very few cases are there

15   global third-party releases.

16         MR. MARTIN:  Right.  Well, I think it may make

17   sense to rework this Paragraph 39 to address the comments of

18   the Court and be able to confer with Ms. Casey and Mr.

19   Clemente and Mr. Morton on those issues.

20         THE COURT:  Okay.

21      (Pause in proceedings)

22         THE COURT:  In Paragraph 51, it's on Page 24.

23         MR. MARTIN:  Yes.

24         THE COURT:  I will find, in Sub (a), that the

25   disclosure statement -- the liquidation analysis is

1    reasonable, persuasive and credible, but not accurate.  I

2    don't know if it is or not.

3              MR. MARTIN:  Okay.  I understand.

4         (Pause in proceedings)

5              THE COURT:  Paragraph 68, Page 29.

6              MR. MARTIN:  Yes.

7              THE COURT:  I feel like I'm putting on my Karnak

8    hat.

9         (Laughter)

10             THE COURT:  Am I -- what am I supposed to be

11   exactly -- okay?  It's reasonably likely that the effect --

12   what's the need for this paragraph and how do I make that

13   finding?  I'm glad there's some people old enough to

14   understand the record.

15        (Laughter)

16             THE COURT:  Okay.

17             MR. MARTIN:  Yes, Your Honor.  I thought I was show

18   my age.

19             Certainly take the Court's point.  I think we did

20   have some information in Mr. Peker's declaration on this,

21   where he testified that that was his belief.  But beyond

22   that, I certainly take the Court's point.  And if you would

23   like me to find that paragraph and point you to it, I can.

24        (Participants confer)

25             MR. MARTIN:  Paragraph 11, Your Honor.

1          THE COURT:  Okay.  That's in there.  I'm not sure

2     what it gets you, but okay.

3          (Pause in proceedings)

4          THE COURT:  Quick question with Paragraph 69.  And

5     I think there are a lot of paragraphs, as we go forward, that

6     I don't always see and I'm wondering about.  And in this one,

7     you want me to -- I guess I'm still in the findings.  You

8     want me to find that all the documents necessary to implement

9     the plan are essential elements in the best interests of the

10    debtors, and I get the valid and binding, and exercise

11    reasonable business judgment.

12         Why am I commenting on the amended LLC agreement or

13    the incorporation agreement or something like that?  What

14    does this mean?

15         MR. MARTIN:  Well, Your Honor --

16         THE COURT:  As opposed to authorizing you --

17         MR. MARTIN:  Yeah.

18         THE COURT:  -- to enter into those agreements that

19    this current management group thinks are the appropriate

20    transactions and are the appropriate ways to document

21    everything.

22         MR. MARTIN:  Yeah.  I mean, obviously, from a board

23    standpoint, a finding that they've acted in -- with

24    reasonable business judgment is important.  And there is a

25    lot that they've done to implement this with the equity

1    commitment letter and the modifications to the various bylaws

2    and the like.

3         But I certainly take the Court's point that

4    something that is different from authorizing the debtor to

5    enter into them and the reorganized debtors.  But that's the

6    reason we put it in there is -- I know there's been a lot in

7    Delaware this week about board activity in another matter.

8    But it's obviously important that the board is viewed as

9    acting reasonably and with good judgment, and that's the

10    reason we included that there.

11         THE COURT:  And does Mr. Peker --

12         MR. MARTIN:  Yeah, I was --

13         THE COURT:  -- testify --

14         MR. MARTIN:  -- going to --

15         THE COURT:  -- to that?

16         MR. MARTIN:  I was flipping through.  I can't

17    remember if we ...

18       (Participants confer)

19         THE COURT:  Because I haven't read my 200 pages yet

20    of that decision.

21         UNIDENTIFIED:  I'm sure you have it set aside for

22    the weekend.

23         THE COURT:  I have it.

24       (Participants confer)

25         MR. MARTIN:  Paragraph 18 is where he's addressing

1    these issues.  I'm not sure that he's actually captured the

2    process by which the board approved these things, so I'm not

3    sure I'm able to identify for you evidentiary testimony on

4    that, Your Honor.

5              Do you see anything else?

6              THE COURT:  Okay.  Well, I'll give you the last

7    sentence in 69, that the debtors are authorized.

8              MR. MARTIN:  Okay.  So the prior sentence before

9    that is one that you would like to see deleted?

10             THE COURT:  I would like to see the whole rest of

11   that deleted.

12             MR. MARTIN:  Everything else on 69.

13             THE COURT:  Uh-huh.

14             MR. MARTIN:  Okay.

15             THE COURT:  Yes.

16             MR. MARTIN:  And I guess, because it's important to

17   me, Your Honor, because I know the board is conscious of

18   exercising their duties, that the fact that we're striking it

19   doesn't mean that they didn't act in --

20             THE COURT:  No, it --

21             MR. MARTIN:  -- reasonable --

22             THE COURT:  -- does not --

23             MR. MARTIN:  -- judgment.

24             THE COURT:  -- mean that.

25             MR. MARTIN:  It just means that you're not finding

1  that they did.

2       THE COURT:  I'm not finding that, I don't think I

3  have an evidentiary basis for it.

4       And I'm not sure that that's what I do at

5  confirmation.  I've got confirmation standards on a plan, is

6  what I have, and I'm finding they either meet them or they

7  don't meet them.  And everybody has had a chance to speak up,

8  so ...

9       MR. MARTIN:  Right.

10       THE COURT:  Okay.

11       MR. MARTIN:  Maybe we'll hang our hat on (a)(3),

12  that we acted in accordance with applicable law.

13       THE COURT:  Okay.  This is another one, disclosure

14  of facts, (jj).

15       MR. MARTIN:  Yep.

16       THE COURT:  The debtors have disclosed all material

17  facts regarding the plan.  I mean, where does that standard

18  come from?  What I have found is that the disclosure

19  statement is sufficient to meet the 1125 standard.

20       MR. MARTIN:  The standard does not come from a

21  section of the Bankruptcy Code.  It probably flows out of the

22  1125 finding.  But I certainly understand if Your Honor would

23  like to stick to your finding that we've satisfied Section

24  1125.

25       THE COURT:  I'll give you an 1125 finding for what

1    it does.  Whether it does everything the company thinks it

2    does, I don't know, but I'll give you a good faith finding.

3              MR. MARTIN:  I think we have that in Paragraph 64.

4              THE COURT:  I think you have it in Paragraph 64.

5    And then I wondered why you have it again in Paragraph 71 and

6    72.

7              MR. MARTIN:  Yeah.  And I think 71 and 72 are more

8    than just the debtors, whereas 64 is the debtors and their

9    agents.  But Paragraph 71 covers, also, the released parties,

10   the exculpated parties, and the related parties under Section

11   1125(e).

12             THE COURT:  It talks about a person who's solicited

13   in good faith.

14             MR. MARTIN:  And I think it also talks about a

15   newly organized successor to the debtor under the plan --

16             THE COURT:  Uh-huh.

17             MR. MARTIN:  -- which, I mean, here, we have a plan

18   sponsor that's acquiring the equity of the debtor, and they

19   would be covered by this good faith finding.

20             THE COURT:  Okay.  Well, I will -- I have no

21   evidence that there's been anything other than good faith, so

22   I'll give you the finding.  But I do questions sometimes what

23   people think they're getting under 1125.  And I'm only giving

24   you, under 1125, whatever it gives.

25             MR. MARTIN:  Okay.  So noted, Your Honor.  Thank

1  you.

2          THE COURT:  But I will give you those findings.

3  Okay.

4      (Pause in proceedings)

5          THE COURT:  Okay.  In Paragraph 14, I think 1146(a)

6  is about three sentences and this goes for a page and a half.

7  I think you should just mirror the Code.

8          MR. MARTIN:  Okay.

9          THE COURT:  Paragraph 16.  I'll give you whatever

10  1145 gives you.

11          In the middle of this paragraph, it says:

12          "On offering of plan securities provided in

13          reliance on the exemption, under 1145(a) of the

14          Bankruptcy Code, may be sold without registration."

15          Does 1145 speak to that?  But I guess, as I'm

16  reading this, I'm only giving you whatever 1145 -- not you,

17  the debtor -- I'm only giving the debtor what 1145 gives the

18  debtor.

19          MR. MARTIN:  Yeah.  So 1145 says that, under the

20  Securities Act or equivalent state law that requires

21  registration for the offer or sale of a security or

22  registration on licensing do not apply to the offer or sale

23  under a plan of a security of the debtor.

24          THE COURT:  Under a plan, right.

25          MR. MARTIN:  Yeah.

1          THE COURT:  But I was reading this middle

2    paragraph, maybe incorrectly, as something beyond that, as,

3    once I get that security, what can I do with it.

4          MR. MARTIN:  I think that's actually covered by a

5    different section of 1145, but I'm not sure that that's what

6    we were addressing here.  Let me just look at that.

7          THE COURT:  It may be resold without registration,

8    sold and resold.

9       (Pause in proceedings)

10         MR. MARTIN:  So I think 1145(a)(3) talks about the

11   offer and the sale of a security other than under a plan.  It

12   looks like it then ties back into a two-year period following

13   the date of the petition.

14         THE COURT:  Okay.  I would just like to make sure

15   that this section is cabined by 1145.

16         MR. MARTIN:  Okay.  We can do that, Your Honor.

17         THE COURT:  And then I'm fine with it.  So if

18   everyone can just take another look at that.

19       (Pause in proceedings)

20         THE COURT:  Okay.  Paragraph 21.

21         MR. MARTIN:  Yes.

22         THE COURT:  Notwithstanding 502(a) and in light of

23   the treatment of all allowed general unsecured claims,

24   there's no requirement to file a proof of claim.  So they're

25   getting zero.

1          MR. MARTIN:  Correct.

2          THE COURT:  So you want to say they don't have to

3    file a proof of claim.

4          MR. MARTIN:  Correct.  And then we go on to say --

5          THE COURT:  But then it says --

6          MR. MARTIN:  Yep, go ahead.

7          THE COURT:  -- there is no requirement to have a

8    proof of claim to have a claim allowed for purposes of the

9    plan.  But you're not going to allow any general unsecured

10   claims, presumably, or maybe you could, but you're going to

11   pay them zero.  I am -- I guess I'm not understanding --

12         MR. MARTIN:  Do you want to be heard on this?

13         MS. CASEY:  I don't know if this -- for the record,

14   Linda Casey on behalf of the United States Trustee.

15         I didn't pay that much attention to this provision,

16   but I paid a lot of attention to the plan's provision --

17         THE COURT:  Okay.

18         MS. CASEY:  -- because the vendor claims are being

19   paid, and there is no claims resolution process in the

20   Bankruptcy Court.

21         So what I -- what they originally had was allowed

22   claims being filed on time and blah, blah, blah.  And I said

23   hey, wait, you don't have schedules and you don't have filed

24   claims.

25         THE COURT:  Uh-huh.

1          MS. CASEY:  So they changed it to allow claims to

2     be allowed in a jurisdiction outside of the Bankruptcy Court.

3          So, when I read this -- and I probably wasn't

4     paying as much attention as I should -- is the second

5     sentence is those claims that need to be paid can be allowed

6     outside of the Bankruptcy Court.  So it probably needs to be

7     tightened up to reflect the language -- the discussion we had

8     on the vendor and convenience class claims being subject to

9     allowance outside of the bankruptcy process.

10         THE COURT:  Okay.  Okay.  What about Paragraph 22

11    then?

12              "All proofs of claim shall be considered objected

13              to and disputed without any further action."

14              I just don't generally do that.

15         MR. MARTIN:  So --

16         THE COURT:  And then everything is going to be

17    deemed withdrawn and expunged?

18         MR. MARTIN:  Yes, Your Honor.  So the reason we

19    have this provision is because, in light of the fact that the

20    Class 9 creditors are receiving nothing, we didn't want to

21    have to do a claims administration process, so we're not

22    going to be objecting to claims.  So, under 21, if they file

23    a claim, it's either allowed or, if there's a claim that

24    doesn't fit within a class, it would not be allowed and

25    entitled to anything under the plan.

1          With -- as Ms. Casey said, with respect to the

2     vendor claims, those will be negotiated between the debtor

3     and the vendors.  To the extent there's any dispute, then

4     they would just pass through the bankruptcy process and each

5     be entitled to their own rights.

6          THE COURT:  I'm not sure if I'm comfortable with

7     this.  The -- you're not setting a bar date.

8          MR. MARTIN:  Correct.

9          THE COURT:  So whoever just happens to file a claim

10    may have to file a claim.

11         MR. MARTIN:  Yes.

12         THE COURT:  But then I think you should have to

13    object to the claim.  If I -- I'm not comfortable with it

14    just sitting out there with nothing.  At some point, when you

15    close your case, then, you know, it will -- your case will be

16    closed.  But if somebody files a proof of claim, I think the

17    debtor has to object to it.  And I have to be able to hear

18    that party as to why they filed a proof of claim and what

19    they think they're entitled to under your plan.

20         I just had a -- I have an argument in front of me

21    in another case, I just read the motion, where somebody is

22    trying to enforce a bar date in a case that's been dismissed.

23    I don't know what people are trying to do with bar dates.

24    Okay?

25         So I think we have to have, if somebody files a

1    proof of claim -- you're probably unlikely to get money

2    because you didn't set a bar date.  But if somebody files a

3    proof of claim, it's there.  And if your objection is I'm

4    objecting to it -- I don't even know if you have to object to

5    it.  If it gets zero, it gets zero.

6           But I'm not going to say, if somebody wants to say

7    I'm entitled to something under this plan so I filed my proof

8    of claim and I want a hearing on it, then I'm going to give

9    them a hearing on it.  So I'm not comfortable with this

10   deemed withdrawn, expunged, whatever, to a claim that I don't

11   even know what it is that somebody has filed.

12           MR. MARTIN:  Okay.  So then --

13           THE COURT:  Somebody may say oh, I think I'm a

14   vendor, I should get paid something.  I don't know.  I don't

15   know what's going to happen.

16           MR. MARTIN:  So it's Paragraph 22, in essence.  And

17   it sounds like, if we have proofs of claims that would be --

18   that would be allowed under 21, and we -- but they're Class 9

19   claimants, we could file a final report saying those claims

20   are not objected to because, to the extent they're allowed --

21           THE COURT:  Sure.

22           MR. MARTIN:  -- they're entitled to zero recovery.

23           THE COURT:  Yeah.  I mean --

24           MR. MARTIN:  Obviously, we're just trying to --

25           THE COURT:  Yes, you do --

1      MR. MARTIN:  -- not stay --

2      THE COURT:  -- not have to --

3      MR. MARTIN:  -- not stay --

4      THE COURT:  -- object to --

5      MR. MARTIN:  -- in bankruptcy --

6      THE COURT:  Yes.

7      MR. MARTIN:  -- for any longer than we have to.

8      THE COURT:  I understand that and you shouldn't

9  stay longer than you have to.  That will help -- that will

10  help in a lot of ways.

11      But what I don't think I can do is just deem

12  people's proofs of claim withdrawn, expunged, disallowed

13  without anything on the record and without giving someone who

14  filed something an opportunity to say whatever they want to

15  say.

16      MR. MARTIN:  Yeah.  And then, presumably, if

17  there's someone that's a Class 7 creditor that's a vendor and

18  we agree with them, they could -- either that claim could

19  either be determined to be allowed or withdrawn --

20      THE COURT:  Sure.

21      MR. MARTIN:  -- because we're going to treat them

22  as Class 7.

23      THE COURT:  Yes.  And Class 9 maybe you don't

24  object to because they're getting zero.

25      MR. MARTIN:  Right.

1       THE COURT:  But I don't like this automatic stuff -

2   -

3       MR. MARTIN:  Okay.

4       THE COURT:  -- because I can't play it out.

5       MR. MARTIN:  All right. So I think that means that

6   Paragraph 22 is the one Your Honor would like to see removed.

7       THE COURT:  Yes.

8       MS. CASEY:  No, I --

9       THE COURT:  No?

10      MS. CASEY:  The plan has a similar provision.  So,

11  instead of removing it, I think it should state what Your

12  Honor wants it to state, so that it contradicts the plan

13  because there's a provision in the plan that's almost exactly

14  word for word --

15      THE COURT:  Yeah.

16      MS. CASEY:  -- like that.

17      THE COURT:  Yeah.

18      MS. CASEY:  So we'd have to actually change it to

19  say what Your Honor wants it to say, if that makes sense.

20      THE COURT:  Or maybe we just remove it from the

21  plan.

22      MS. CASEY:  Or remove it from the plan, whatever

23  Your Honor --

24      THE COURT:  And it can say that in the order.

25      MR. MARTIN:  Okay.  We'll do one of those two.

1    We'll either have a Paragraph 22 that says what you've stated

2    on the record today or we will delete it and then also delete

3    it in the plan that we attached to the order.

4            MR. MORTON:  Your Honor, if I may just briefly?  I

5    think the way to solve this, probably the easiest, is just to

6    strike the language in Paragraph 22 and have the new

7    Paragraph 22 simply say paragraph whatever of the plan is

8    stricken.  And then, that way, it's completely

9    (indiscernible)

10           THE COURT:  That may work.

11           MR. MARTIN:  Okay.  I'm fine with that.  Thanks,

12   yeah.  If you and Ms. Casey are happy with it, I'm happy with

13   it.

14           THE COURT:  Okay.  Paragraph 24, on Page 22.

15   There's a sentence about six lines down that starts:

16               "All holders of claims and interests receiving

17               distributions and all other necessary parties shall

18               prepare, execute, and deliver agreements or

19               documents and take other actions as the debtors and

20               plan sponsor may jointly determine are advisable."

21           What does that -- what am I requiring people to do,

22   some kind of mandatory injunction to do some agreement --

23           MR. MARTIN:  Well, I would --

24           THE COURT:  -- and take some action that I don't

25   know what it is?

1          MR. MARTIN:  I would think of it more as a further

2     assurances clause, especially with respect to our secured

3     creditors that may have filed UCC statements.  We may ask

4     them to file UCC-3s to clean up that record.

5          THE COURT:  Don't you give yourself the ability to

6     do that somewhere as their agent if they don't do it?

7          MR. MARTIN:  Well, I don't recall that being

8     anywhere else in the plan.

9          THE COURT:  Okay.  I'm not comfortable with it the

10     way it is.  I get what you want and I've seen language that

11     doesn't bother me before.  I can't tell you where that is.

12     But if you want to do is an ability to remove liens, not a

13     problem.  But this -- and I have had situations where someone

14     says oh, you, lessor, have to sign something new for my lease

15     and oh, by the way, give me this agreement and you have to

16     pay your attorneys to get it done.  Like no.

17          So, if there is -- if there is something specific

18     you need people to do, then I need to understand what it is.

19     But if what you're talking about is liens and UCC stuff,

20     okay, then you need to be specific.  But I'm not putting an

21     onus on somebody else that I don't know of, don't know what

22     it is today, to take an action because the debtor thinks it's

23     necessary.

24          MR. MARTIN:  Understood, Your Honor.

25          (Pause in proceedings)

1          THE COURT:  Okay.  There's a provision in Paragraph

2    28 -- and maybe this was in the pan; and, if it was, it's

3    okay -- having to do with executory contracts, the last

4    sentence:

5              "Modifications, amendments, supplements, and

6              restatements that have been executed shall not be

7              deemed to alter the pre-petition nature of the

8              contract or the validity, priority, or amount of

9              any claims that may arise."

10         I don't know what you're thinking about there, if

11   there's somebody you're directed it -- you're concerned

12   about.

13         MR. MARTIN:  I'm just seeing if that's in the plan,

14   Your Honor, first.  It is in the plan, it's in Article

15   8(a)(1) on Page 43.

16         THE COURT:  Okay.

17         MR. MARTIN:  It's actually in two places in the

18   paragraph that continues over from Page 42 and then in the

19   second full paragraph.

20         THE COURT:  Okay.  What -- I'm sorry.  What

21   article?  It's not --

22         MR. MARTIN:  Article 8.

23         THE COURT:  8?

24         MR. MARTIN:  (a)(1).

25         THE COURT:  Okay.  I got Article 8 as a settlement

1    section.

2              MR. MARTIN:  Of the plan?

3              THE COURT:  Uh-huh.

4              MR. MARTIN:  Ah --

5              THE COURT:  Yes.

6              MR. MARTIN:  I may be looking at the solicitation

7    version.

8         (Participants confer)

9              MR. MARTIN:  5, Article 5(a).

10              THE COURT:  Article 5.  Okay.

11         (Participants confer)

12              MR. MARTIN:  Mr. Stier tells me it's in the last

13    sentence of the second paragraph in Article 5(a).

14              THE COURT:  Okay.

15              MR. MARTIN:  Oh, I see it.  I was -- I apologize.

16    The Article 8 was in the disclosure statement part of it.

17              THE COURT:  Okay.  It's that whole paragraph.

18    Okay.

19         (Pause in proceedings)

20              THE COURT:  Okay.  I am assuming that the thirty-

21    day -- on Paragraph 31, that the 30 days to amend the

22    schedules of rejected contracts or cure amounts was in the

23    plan.

24              MR. MARTIN:  I believe what was in the plan was 45

25    days.

1          (Participants confer)

2                    MR. MARTIN:  We amended that provision in the plan,

3     yeah.  We originally had 45 days in the plan.  I believe Ms.

4     Casey commented on that period of time and we agreed to

5     reduce it to 30, and that was in one of the plan amendments.

6                    THE COURT:  Okay.

7                    MR. MARTIN:  And it's here, as well.

8                    THE COURT:  Okay.  Paragraph 32 is the same comment

9     I had before.  If somebody files a proof of claim with

10    respect to an executory contract or unexpired lease, you need

11    to object to it, if it's objectionable.

12         (Pause in proceedings)

13                    THE COURT:  Paragraph 51.

14                    MR. MARTIN:  Okay.

15                    THE COURT:  I don't think there's any authority for

16    me to say what happens if something gets reversed.

17                    MR. MARTIN:  All right.  In light of the fact that

18    we don't have any objectors, I'm not sure I'm very worried

19    about that provision, Your Honor.  So, if you're

20    uncomfortable with it, I think we can probably remove it.

21                    THE COURT:  Okay.

22         (Pause in proceedings)

23                    THE COURT:  I'm looking at your modification

24    provision, I do see some changes.

25                    MR. MARTIN:  I think both in 52 and 53, the comment

1    was to ensure that any modification is nonmaterial.

2            THE COURT:  Yes, it needs to be nonmaterial.  Does

3    this -- does it need to be in conformance with the Code --

4            MR. MARTIN:  Well, what it --

5            THE COURT:  -- 1127?

6            MR. MARTIN:  It would have to comply with 1127,

7    yes.

8            THE COURT:  You should say that.

9            MR. MARTIN:  Okay.

10         (Pause in proceedings)

11           THE COURT:  56, applicable non-bankruptcy law.  It

12   seems like a very broad statement.

13           MR. MARTIN:  Would it be more acceptable to the

14   Court if it says applicable non-bankruptcy state law because,

15   under the supremacy code, that would be accurate?

16           THE COURT:  Well, there are provisions of the Code

17   that specifically reference notwithstanding applicable non-

18   bankruptcy law, but not every provision of the Code says

19   that.

20           MR. MARTIN:  Okay.

21           THE COURT:  And so I don't know what you're

22   particularly going for.  You're getting already your 303

23   Delaware statutory I don't need to get corporate approval on

24   stuff.  That's usually what people are looking for and that's

25   already specifically in here.  I don't know what you're

1    looking for.  But not every provision of the Code, I don't

2    think --

3              MR. MARTIN:  Uh-huh.

4              THE COURT:  -- would fall within this, and so

5    that's why this concerns me.  I just think it's super broad -

6    -

7              MR. MARTIN:  Okay.

8              THE COURT:  And I don't really know what it means.

9              MR. MARTIN:  Well, as between deleting it or

10   perhaps adding "unless otherwise provided in the Bankruptcy

11   Code," would Your Honor have a preference?

12             THE COURT:  No, because it's actually the other way

13   around.  The Bankruptcy Code provides certain instances in

14   which it overrides state law, but it doesn't everywhere.

15             MR. MARTIN:  Okay.

16             THE COURT:  Right?  For example, if you're selling

17   something that you can't sell under state law, that could be

18   a problem.  Okay?  So this --

19             MR. MARTIN:  Right.

20             THE COURT:  -- really super broad statement just

21   doesn't work for me.

22             If there is something in particular you're

23   concerned about the need to override, then I'm happy to

24   entertain that and it might be permissible.  But I think this

25   is a very broad statement to have in a confirmation order --

1                    MR. MARTIN:  Okay.

2                    THE COURT:  -- that some judge looks at down the

3        line.  So, unless you can narrow it or give me a good reason,

4        it needs to come out.

5                    MR. MARTIN:  All right.  Understood.

6                    THE COURT:  Did the substantial consummation

7        paragraph come out?

8                    MR. MARTIN:  It --

9                    THE COURT:  No.

10                   MR. MARTIN:  It is still there.

11                   THE COURT:  It needs to come out.  That's future-

12       looking.

13                   MR. MARTIN:  Okay.

14                   THE COURT:  I don't decide substantial consummation

15       until I have to or the appellate court has to.

16                   MR. MARTIN:  All right.  Understood.

17                   THE COURT:  And 60.  The last sentence in Paragraph

18       50 -- I mean -- I'm sorry -- 60, I don't understand what that

19       means.

20                   MR. MARTIN:  Well, as I understand it, it simply

21       says that the plan treatment and provisions in it would apply

22       to those claims held by parties, even if they did not vote on

23       the plan.

24                   THE COURT:  Okay.  But that's not what it says.  It

25       says they shall be "fixed, adjusted, or compromised."  What

44

1    does that mean?  "As applicable."

2              MR. MARTIN:  Well, we should probably --

3              THE COURT:  If you want to say it's binding under

4    1141, whether you voted or not --

5              MR. MARTIN:  Okay.

6              THE COURT:  That's the concept, right?

7              MR. MARTIN:  All right.  Yeah.

8              THE COURT:  But I don't fix, adjust, or compromise

9    interests in claims.  They're classified, it gets confirmed,

10   it doesn't.

11             MR. MARTIN:  Understood.

12             THE COURT:  So you prob -- I'm sure you have some -

13   - well, it doesn't matter whether it's in here or not.  1141

14   says what 1141 says.

15             MR. MARTIN:  Understood.

16             THE COURT:  Okay.  So those are my comments.

17             MR. MARTIN:  All right.  Well, we will be happy to

18   make those and submit them.

19             The one issue I did want to raise with the Court is

20   you may recall that we had some milestones in the credit

21   agreement and in the solicitation order.  One of those was,

22   40 days after we filed our case, we would have the

23   confirmation order entered.  The fortieth day is Sunday.  So

24   we were hoping to have the order entered today, but we

25   recognize it's a Friday afternoon and we're not sure if, in

1      light of the hour, we would be able to get this all changed

2      and circulated around and submitted; and, if we did by four

3      or five o'clock, whether Your Honor would still be here.

4                    THE COURT:  I'm here.

5                    MR. MARTIN:  Okay.

6                    THE COURT:  I'm here.

7                    MR. MARTIN:  We will do our --

8                    THE COURT:  Just contact chambers if you have it.

9                    MR. MARTIN:  Okay.

10                   THE COURT:  If not, send it over the weekend and I

11     will look at it first thing Monday morning, and I will assume

12     that this whole deal doesn't fall apart because of that.

13          (Laughter)

14                   MR. MARTIN:  I asked Mr. Clemente that, if we came

15     to this part of the hearing, that he would --

16                   THE COURT:  So --

17                   MR. CLEMENTE:  (Not identified) Fair assumption,

18     Your Honor.

19                   THE COURT:  Okay.

20          (Laughter)

21                   THE COURT:  Thank you.

22                   MR. MARTIN:  You see, Your Honor, I did tell Mr.

23     Clemente that I was going to ask and that he needed to say

24     what he just said if we got to this point of the hearing.

25          (Laughter)

1          (Participants confer)

2               MR. MARTIN:  Oh, and we will also submit the final

3     order of cash management under COC since Your Honor has

4     indicated you will enter the confirmation order when it's in

5     the proper form, and so it can be a final order.  Ms. Casey

6     has just reminded me.

7               THE COURT:  Okay.  That's fine.

8               MR. MARTIN:  And then the only other business we

9     have is Mr. Komrower will file a notice of appearance and a

10    2019 statement.

11              THE COURT:  And a 2019.

12              MR. MARTIN:  And then we'll file a subsequent COC

13    alerting the Court to that effect, with the order

14    resubmitted.

15              THE COURT:  Okay.

16              MR. MARTIN:  Other than that --

17              THE COURT:  Okay.

18              MR. MARTIN:  -- we did have some informal comments

19    on our retention application from Ms. Casey, which we decided

20    to put that off because we wanted to get through today, and

21    I'll be talking with her about that probably next week.

22              THE COURT:  Okay.

23              MR. MARTIN:  And then we will probably be reaching

24    out for some hearings, hopefully some of our last ones, maybe

25    in March, so that we can get fee applications and any final

1    retention approved and maybe even a final report, if we're

2    there yet.

3                    THE COURT:  Okay.  Sounds good.

4                    Anything else?

5                    MR. MARTIN:  Just to thank Your Honor and the court

6    staff for helping us get through this case very quickly.  I

7    know the company and the plan sponsor are excited to get to

8    work and grow this business and we appreciate everyone's help

9    in making that possible.

10                   THE COURT:  Well, congratulations to everyone.

11                   Okay.  We're adjourned.

12                   COUNSEL:  Thank you, Your Honor.  Thank you.

13          (Proceedings concluded at 3:07 p.m.)

14                                        *****

15

16

17

18

19

20

21

22

23

24

25

1

CERTIFICATION

2           I certify that the foregoing is a correct

3   transcript from the electronic sound recording of the

4   proceedings in the above-entitled matter to the best of my

5   knowledge and ability.

6

7

8

9

10

11   _____        February 5, 2024

12   Coleen Rand, AAERT Cert. No. 341

13   Certified Court Transcriptionist

14   For Reliable

15

16

17

18

19

20

21

22

23

24

25